IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADAM LONGORIA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-1545 |
| | § | |
| NATHANIEL QUARTERMAN, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Pending in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 9) against Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered the motion, the response in opposition (Document No. 11), the claims raised by Petitioner in his § 2254 Application (Document No. 1), the state court records, and the applicable law, the Court ORDERS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 9) is GRANTED, Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and that this case is DISMISSED WITH PREJUDICE.

**I.      Introduction and Procedural History**

Adam Longoria ("Longoria") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of two 2003 felony convictions in the 184th District Court of Harris County, Texas, for aggravated sexual assault of a child, Cause Nos. 936955

and 936956. Longoria was charged by indictment with those two offenses on March 28, 2003, was found guilty by a jury on September 30, 2003, and was sentenced by the jury after a punishment phase to fifty years incarceration on each offense. Both convictions were affirmed on appeal on October 19, 2004, in an unpublished, consolidated opinion. *Longoria v. State*, Nos. 14-03-01120-CR and 14-03-01121-CR. Longoria's petitions for discretionary review were thereafter refused on March 2, 2005.

On March 1, 2006, Longoria filed two state applications for writ of habeas corpus, challenging each of his two convictions. Both applications were denied by the Texas Court of Criminal Appeals on April 25, 2007, on the findings of the state trial court without a hearing. *Ex parte Longoria*, Application Nos. WR-66,735-01 and WR-66,735-02. This § 2254 proceeding, filed by Longoria on or about April 30, 2007, followed. Respondent has filed a Motion for Summary Judgment (Document No. 9), to which Longoria has filed a response in opposition (Document No. 11). This § 2254 proceeding is therefore ripe for ruling.

**II.    Factual Background**

The factual background, as set forth briefly by the Texas Court of Appeals in its written opinion affirming Longoria's convictions, is as follows:

> In the summer of 2002, [Longoria] resided in Pearland, Texas with his wife Nancy Quintero, and her two daughters, aged ten and twelve. The daughters had recently returned to their mother's home from living in foster care and with their grandmother while their mother struggled with drug and alcohol addiction. Sometime during that summer, the grandmother of the girls received a phone call from the elder daughter, who told the grandmother than her stepfather was "touching and feeling" on her. The grandmother immediately removed both girls from the home and took them to the Texas Children's Hospital, where they were given medical examinations. Defendant was arrested and charged with two counts of aggravated sexual assault of a child.

> During the guilt-innocence phase of the trial, both of the girls testified as to the abuse they received from their stepfather. The State also presented evidence from witnesses, both lay and expert, about the physical and psychological impact of child sexual abuse, undergoing a pelvic exam, and life in a foster home. The jury convicted Longoria on both counts.

*Longoria v. State*, Nos. 14-03-01120-CR and 14-03-01121-CR.

### III.  Claims

Longoria alleges, in essentially five claims, that his trial counsel, Jonathan J. Paull, was ineffective for:

1. failing to object to the testimony of Kamari Jenkins on the grounds that she was not qualified to testify as an expert, and that her testimony, based on her treatment of the complainants months after the offenses, was not relevant;

2. failing to object to the hearsay testimony of Kamari Jenkins and Dr. Judy Rambur as to what they were told by the complainants;

3. failing to object to the impermissible and prejudicial victim impact testimony of Kamari Jenkins, Dr. Judy Rambur and Dr. Michelle Lyn;

4. failing to object to the prosecutor's improper jury argument; and

5. failing to investigate the case, investigate and interview witnesses, and subpoena certain witnesses for trial.

Longoria raised each of these claims in his direct appeal and his state applications for writ of habeas corpus. The claims were rejected by the state courts on the merits.

Respondent argues in his Motion for Summary Judgment that no relief is available to Longoria on any of his ineffectiveness claims under § 2254(d) because the Texas courts' adjudication of the claims was not contrary to or an unreasonable application of clearly established Federal law as established by the Supreme Court of the United States nor was it based on unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

3

**IV.     Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.' " *Yarborough v. Alvarado*,541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams*, 529 U.S. at 405-406).  A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  But "'a federal

4

habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 124 S.Ct. 1652 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 534 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative. In addition, the correctness of the state court's decision is not determinative. As

instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

## V.  Discussion

Ineffective assistance of counsel claims are generally measured by reference to the clearly established federal law set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong

presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003); *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 2462 (2005) ("hindsight is discounted").

Both the Texas intermediate court of appeals, and the Texas Court of Criminal Appeals

rejected Longoria's ineffectiveness claims. In connection with Longoria's direct appeal, Texas' Fourteenth Court of Appeals rejected Longoria's ineffectiveness claims as follows:

> In his first point of error, [Longoria] contends that he received ineffective assistance of counsel was a result of his lawyer's failure to object to the following: allegedly inadmissible hearsay regarding statements of the complainants; the qualifications of one of the State's expert witnesses; testimony regarding the impact on the victims of sexual assault, pelvic sexual exams, and life in foster care; and an allegedly improper jury argument made by the State.
>
> The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prove a claim of ineffective assistance, an appellant must prove, by a preponderance of the evidence, that his attorney's representation was deficient in that it fell below the objective standard of professional norms; furthermore, an appellant must prove that a reasonable probability exists that, but for the counsel's deficiency, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 2064-69, 80 L.Ed.2d 674 (1984); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).
>
> Our review of defense counsel's representation must be highly deferential, presuming that appellant's counsel's actions fell within the wide range of reasonable and professional assistance. *Bone*, 77 S.W.3d at 833; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Accordingly, to establish deficient performance, a defendant must not only show that his trial counsel's performance fell below an objective standard of reasonableness but also must rebut the presumption that his trial counsel's decisions were based on sound trial strategy. *See Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. A finding of ineffectiveness cannot be supported by second-guessing the strategy of trial counsel through hindsight or by the fact that another attorney might have pursued a different course. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *See also Sessums v. State*, 129 S.W.3d 242, 246 (Tex. App.–Texarkana 2004, pet. ref'd).
>
> With regard to [Longoria's] contentions concerning his counsel's failure to object to allegedly inadmissible hearsay testimony, the qualifications of an expert witness, or allegedly improper jury argument, we cannot say that the attorney's inaction fell below an objective standard of professional norms. Evaluating the attorney's choices made during trial would require us to second-guess his strategy through hindsight, an exercise which cannot support a finding of ineffective assistance. *See Blott*, 588 S.W.2d at 593; *Sessums*, 123 S.W.3d at 246.

> [Longoria's] allegations regarding his trial counsel's failure to object to victim impact testimony, however, require further examination. In support of his argument that testimony regarding the impact of the crime on the victims was improper, [Longoria] cites *Miller-El v. State*, 782 S.W.2d 892 (Tex. Crim. App. 1990). Although the Court of Criminal Appeals stated that victim impact testimony did not have "any tendency to make more or less probable the existence of any fact or consequence at the guilt stage of trial," the court went on to hold that victim impact testimony *was* admissible as a "'circumstance of the offense.'" *Id.* at 895. In this case, the testimony regarding the girls' behavior and long-term prognosis would have a tendency to make more or less probable a fact or consequence at the guilt stage; that is, whether [Longoria] committed the crimes at all. Since victim impact testimony would have been admissible in this case, we cannot say, therefore, that [Longoria's] trial counsel's failure to object to the testimony fell below the objective standard of professional norms.
>
> [Longoria] thus fails to meet the first part of the *Strickland* test. His first point of error is overruled.

*Longoria v. State*, Nos. 14-03-01120-CR and 14-03-01121-CR at 3-4. The Texas Court of Criminal Appeals also rejected Longoria's ineffectiveness claims, finding that the contents of the affidavit filed by Longoria's counsel to be true, and concluding that Longoria had failed to "show that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct there is a reasonable probability that the result of the proceeding would been different." *Ex parte Longoria*, WR-66,735-01 and -02 at 91. Based on the reasons set forth below, the state courts' adjudication of Longoria's ineffectiveness claims is not contrary to or an unreasonable application of *Strickland* nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### A.   Kamari Jenkins' Testimony

In his first ineffectiveness claim, Longoria maintains that his trial counsel was ineffective for

failing to object to testimony of Kamari Jenkins on the basis that she was not qualified to give expert testimony and that her testimony was not relevant to the issue of guilt.  According to Longoria, Kamari Jenkins, who had only one year of experience as a social worker specializing in sexual abuse, was not sufficiently qualified to testify as an expert at trial.  In addition, Longoria argues that Jenkins' testimony, which was based on her evaluation and treatment of the complainants months after the alleged abuse, was not relevant to his guilt.

In connection with his direct appeal, Longoria claimed that Paull was ineffective for failing to object to the testimony of Kamari Jenkins.  In rejecting the claim, the Texas Court of Appeals found that counsel's performance was objective reasonable, and based on reasoned trial strategy. *Longoria v. State*, Nos. 14-03-01120-CR, 14-03-01121-CR at 4 ("With regard to [Longoria's] contentions concerning his counsel's failure to object to allegedly inadmissible hearsay testimony, the qualifications of an expert witness, or allegedly improper jury argument, we cannot say that the attorney's inaction fell below an objective standard of professional norms.  Evaluating the attorney's choices made during trial would require us to second-guess his strategy through hindsight, an exercise which cannot support a finding of ineffective assistance.").  The Texas Court of Appeals' rejection of this ineffectiveness claim is not contrary to or an unreasonable application of *Strickland*.  The standard for assessing an attorney's performance under *Strickland* is objective reasonableness.  Here, where the record shows that Kamari Jenkins had some experience as a social worker dealing with sexually abused children and was closely supervised during the time she evaluated and treated the complainants, and where Paull cross-examined Jenkins regarding her limited experience, it cannot be said that counsel's performance was objectively unreasonable.  Therefore, under § 2254(d), no relief is available on this ineffectiveness claim.

### B.     Hearsay Testimony

In his second ineffectiveness claim, Longoria contends that counsel was ineffective for failing to object to the hearsay testimony offered by Kamari Jenkins and Dr. Judy Rambur, both of whom testified as to what the complainants had told them about Longoria and his sexual abuse of them.

In connection with Longoria's state applications for writ of habeas corpus, trial counsel, Jonathan J. Paull, was ordered to address Longoria's claims of ineffectiveness. In an affidavit filed with the trial court on October 19, 2006, Paull stated as follows with respect to the alleged hearsay testimony:

> I, Jonathan J. Paull, counsel for the defendant, Adam Longoria, at trial, hereby swear that I made all objections deemed reasonable during the course of trial. Any objections not made were based on trial strategy. The trial strategy that was developed through the investigation was that the two victims had a pattern of claiming abuse in homes that they did not wish to be at so that they could move back with their grandmother (the only true paternal figure they ever knew, since their mother was strung out on drugs). The claims of abuse got them removed from Longoria's home into a foster home. At the beginning of Jenkins testimony she started talking about how they moved into a foster home after these allegations and then came up with other allegations. If you go through the cross I believe I got Ms. Jenkins to state that the victims made allegations about the foster family as well, based on some of the evidence that she elicited during this portion. Again any objections not made were based on trial strategy. As far as Dr. Rambur I objected as to hearsay on page 7 of the Applicant's writ (See Tr. Trans. Pg 15) as the Applicant argues I should have; furthermore the Judge overruled my objection. I believe I remember asking for a running objection.

*Ex parte Longoria*, WR-66,735-01 & -02 at 74. The contents of Paull's October 19, 2006, affidavit were found to be true by the state trial court. *Id.* at 91. Based on the contents of Paull's October 19, 2006, affidavit, which are generally supported by the record, Paull's failure to object to the alleged hearsay testimony of Kamari Jenkins and Dr. Judy Rambur does not constitute deficient performance within the meaning of *Strickland*. Accordingly, the state courts' rejection of this claim was not contrary to or an unreasonable application of *Strickland*, and was not based on an

11

unreasonable determination of the facts in light of the evidence. Under § 2254(d), this ineffectiveness claim fails.

        **C.**        **Victim Impact Testimony**

In his third ineffectiveness claim, Longoria maintains that counsel was ineffective for failing to object to the victim impact testimony given by Kamari Jenkins, Dr. Judy Rambur and Dr. Michelle Lyn. According to Longoria, those witnesses' testimony regarding the impact the offenses had on the complainants, including the complainants' subsequent placement in foster care, the physical examinations they underwent, and the possible long term psychological and emotional effects of sexual abuse, was clearly objectionable as victim impact testimony.

The Texas Court of Appeals directly addressed and rejected this ineffectiveness claim. In so doing, the Texas Court of Appeals determined, based on Texas law, that counsel had no viable basis for objection. *Longoria v. State*, Nos. 14-03-01120-CR & 14-03-01121-CR at 4 ("Since victim impact testimony would have been admissible in this case. . . "). Based on that state law determination, a determination that this Court is in no position to contradict, *Manns v. Quarterman*, 236 Fed. Appx. 908, 916 (5th Cir. 2007) ("On habeas review, the district court is not permitted to second-guess the Texas court's interpretation of Texas law but must instead respect it as controlling."), *pet. for cert. filed* (Jul 06, 2007)(NO. 07-6461), counsel's performance was not deficient within the meaning of *Strickland*. Therefore, under § 2254(d), no relief is available on this ineffectiveness claim.

### D.     Prosecutor's Improper Jury Argument

In his fourth ineffectiveness claim, Longoria complains that his counsel should have objected to the prosecutor's improper jury argument, urging the jurors to put themselves in the places of the complainants. Such argument, Longoria maintains, was clearly objectionable.

The Texas Court of Appeals determined that counsel's failure to object to the prosecutor's jury argument was not objectively unreasonable. *Longoria v. State*, Nos. 14-03-01120-CR & 14-03-01121-CR at 4. Having reviewed the prosecutor's entire jury argument, and the context in which the allegedly improper jury argument was made, the Texas Court of Appeals' determination that counsel's failure to object was not objectively unreasonable is itself not unreasonable. Moreover, having reviewed the jury argument in the context of the entire trial, it cannot be said that counsel's failure to object prejudiced Longoria within the meaning of *Strickland*. Therefore, under § 2254(d), no relief is available on this claim.

### E.     Investigation, Interview and Subpoena of Witnesses

In his final ineffectiveness claim, Longoria contends that his counsel was ineffective for failing to more fully investigate the case, and search for, interview and subpoena witnesses who could have bolstered the defense's theory that the complainants had a tendency and a reason to make false charges against him. Longoria identifies the following individuals, who he claims his counsel should have investigated, interviewed and subpoenaed for trial: (1) Victor Udell Jackson; (2) Adam Longoria, Jr.; (3) Eugenia Quintero; (4) an un-named former teacher of one of the complainants, who the complainant made a false statement about; (5) an un-named police officer who viewed the complainants playing on the date of their outcry statements; and (6) un-named neighbors and classmates of the complainants. In addition, Longoria complains that his counsel should have hired

13

a medical expert for the defense.

Paull addressed this ineffectiveness claim in detail in the affidavit he provided the state trial court on October 19, 2006. In that affidavit, Paull stated as follows:

> I, Jonathan J. Paull, counsel for the defendant, Adam Longoria, at trial, hereby swear that any and all possible facts were thoroughly investigated to the best of my ability. I interviewed witnesses, prepared and reviewed medical records, consulted with other lawyers and brought in additional trial counsel to assist with the trial preparation and various other responsibilities related to representation of this client. In addition, I hired a team of private investigators to interview all relevant witnesses. The information obtained from these witnesses was discussed with the defendant and subjectively utilized based upon an agreed trial strategy.
>
> * * *
>
> I, Jonathan J. Paull, counsel for the defendant, Adam Longoria, at trial, hereby swear that I personally, or through a hired investigator, investigated all of the state's witnesses and possible defense witnesses. To the best of my recollection, being that the case was more than two years ago I believe that after getting a hold of school records and talking to former teachers of the victims (Edlin and Emily Delgado) as well as the outcry witness [,] I reviewed the medical records and the backgrounds of the State's witnesses, namely the two medical experts with some of the foremost legal experts in the field of sexual assaults in Houston, Texas. Although Mr. Longoria along with his common law wife Debbie Chavez provided the names of some witnesses, those witnesses told of facts that were not favorable to Mr. Longoria. In fact, some of the evidence pointed to a pattern of neglect to which a jury could infer that Ms. Chavez and the Applicant [Longoria] would place the children she care[d] for in harm's way. After weighing these facts I determined that the most favorable testimony was used. Based on my recollection the police officer would not have testified that the girls were laughing and giggling when they left. The teacher was either subpoenaed or voluntarily came to court[.] [S]he sat outside the courtroom, we were ready to place her on the stand, the Defendant, myself as well as the other trial counsel determined that her testimony would not be needed because of the victim's poor performance on the stand at trial. We jointly decided not to use it.

*Ex parte Longoria*, ER-66,735-01 & -02 at 73-74. The Texas courts found the contents of Paull's October 19, 2007, affidavit to be true. *Id.* at 91. Based on the contents of Paull's affidavit, counsel did investigate the case and interview witnesses. In addition, based on the contents of Paull's affidavit, counsel's utilized reasoned trial strategy in determining which witnesses to call to testify for

14

the defense. Longoria has not shown that the result of the trial would have been different if a particular witness had been called to testify for the defense. In addition, Longoria has not shown that a medical expert could have been retained to testify favorably for the defense at trial. Accordingly, the Texas courts' rejection of this ineffectiveness claim is not contrary to or an unreasonable application of Strickland, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding(s). Under § 2254(d), no relief is available on this claim.

### VI.   Conclusion and Order

Based on the foregoing and the conclusion that Longoria is not entitled to any relief in this proceeding under § 2254(d), the Court

ORDERS that Respondent's Motion for Summary Judgment (Document No. 9) is GRANTED, that Petitioner's Federal Application for Writ of habeas Corpus (Document No. 1) is DENIED, and that this § 2254 proceeding is DISMISSED WITH PREJUDICE on the merits. It is further

ORDERED that a Certificate of Appealability is DENIED. A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Where the claims have been dismissed on the merits, the petitioner "must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001). When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Given the claims raised herein as well as the rejection of Petitioner's claims by the Texas courts, the Court determines that reasonable jurists would not find the assessment of Petitioner's constitutional claims to be debatable or wrong. Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 17th day of October, 2007.

Frances H. Stacy
United States Magistrate Judge